U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 5 2014

CLERK, U.S. DISTRICT COURT
By _____
                Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JULIUS JONES,                    §
                                 §
        Plaintiff,               §
                                 §
VS.                              §   NO. 4:12-CV-865-A
                                 §
CAROLYN W. COLVIN, ACTING        §
COMMISSIONER OF SOCIAL SECURITY, §
                                 §
        Defendant.               §

## MEMORANDUM OPINION
### and
### ORDER

Before the court for decision is the complaint of plaintiff, Julius Jones, filed under the authority of 42 U.S.C. §§ 405(g) and 1383(c)(3), complaining of the denial by defendant, Carolyn W. Colvin, Acting Commissioner of Social Security Administration, ("Commissioner") of his applications for a period of disability and disability insurance benefits under title II of the Social Security Act (the "Act") and for supplemental security income under title XVI of the Act. After having considered the filings of the parties, the administrative record, the proposed findings and conclusions and recommendation of Magistrate Judge Jeffrey L. Cureton, and pertinent legal authorities, the court has concluded that the decision of Commissioner should be affirmed.

I.

## Background

Plaintiff's applications were denied by Commissioner initially and on reconsideration.  He requested a hearing before an administrative law judge, which was held August 4, 2011.  The administrative law judge ("ALJ") rendered a decision against plaintiff on October 13, 2011.  Plaintiff's request for review was denied on October 5, 2012, with the result that the ALJ's decision became the final decision of Commissioner about which plaintiff complains in this court.  On December 4, 2012, plaintiff filed his complaint in this action seeking reversal of the Commissioner's decision.

Consistent with the normal practices of this court, plaintiff's complaint was referred to the magistrate judge for proposed findings and conclusions and a recommendation, and the parties were ordered to treat the application as an appeal by plaintiff from Commissioner's ruling adverse to him.  Each party filed a brief on appeal.  On February 5, 2014, the magistrate judge filed his proposed findings and conclusions and his recommendation ("FC & R") that the Commissioner's decision be reversed, and that the matter be remanded for further administrative proceedings.  On March 10, 2014, Commissioner filed his objection to the FC & R.

2

II.

## Positions Taken by the Parties, the FC & R, and Commissioner's Objection to the FC & R

A.   Plaintiff's Opening Brief

In his brief filed with the magistrate judge, plaintiff defined in broad terms the issue to be decided to be "[w]hether the Commissioner failed to fully develop the record concerning a mental [and] physical impairment," Pl.'s Br. at 4th unnumbered page; and, plaintiff defined proposed sub-issues as "[f]ailure to fully consider a physical impairment," id. at 6th unnumbered page, and "[f]ailure to fully consider or investigate a severe mental impairment," id. at 7th unnumbered page.

In general, plaintiff's complaint was that the ALJ should have obtained an opinion from a medical source on the issue of whether plaintiff had an impairment that adversely affected his ability to work.  Plaintiff summed up as follows:

> The issue presented then becomes what amount of evidence or lack of evidence triggers the ALJ's duty to investigate an impairment more fully.  The Court in Ripley [v. Chater, 67 F.3d 552, 557 (5th Cir. 1995)] holds that when a record does not clearly establish an impairment[']s effect on a claimant's ability to work, and the only evidence alluding to limitations is the claimant's own testimony, it is appropriate for the court to remand the case for further investigation or to get an opinion from a medical source.

Id. at 4th unnumbered page.

The physical impairments plaintiff claims the ALJ failed to fully consider were plaintiff's back and leg problems. _Id._ at 6th unnumbered page. According to plaintiff, the record did "not clearly establish his conditions on his ability to work." _Id._ Plaintiff requested a remand to the ALJ "so that a medical opinion can be proffered concerning the physical impairment." _Id._ at 7th unnumbered page.

The evidence of a severe mental impairment that, according to plaintiff, the ALJ failed to fully consider or investigate is evidenced in the record by notations that plaintiff said that he had trouble remembering his medications, that he sometimes had problems getting along with his neighbors, that he cannot get along with authority figures, that he has been let go from work for fighting, that he has an unusual fear of driving, and that he does not follow spoken instructions well because he forgets stuff. _Id._ Plaintiff added that there were notations in the medical record that plaintiff said he had chronic depression, occasional suicidal thoughts, decreased mood, and lack of interest. _Id._ at 7th and 8th unnumbered pages. Plaintiff complained that the ALJ should have investigated a mental impairment further. _Id._ at 8th unnumbered page.

In conclusion, plaintiff contended that "the inclusion of possible mental and or physical impairments may greatly impact

the outcome of the case" and "[o]ther limitations could limit Jones['s] ability to preform [sic] his past relevant work." Id. Plaintiff's conclusion and prayer was that "the case be remanded with orders that the ALJ fully consider and/or investigate limitations that may stem from physical and mental impairments, and in accordance with Ripley, a medical opinion be sought concerning limitations from such impairments." Id. at 9th unnumbered page.

B.   Commissioner's Responsive Brief

Commissioner's responsive brief took the position that the ALJ properly developed the record; that the ALJ properly applied a five-step sequential evaluation process in reaching his decision[1]; and that substantial evidence and relevant legal precedent support the final ruling of Commissioner.

---

[1]The five-step evaluation process Commissioner used to determine whether a claimant is disabled is set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  See ALJ Op. at 2; Tr. at 11.  First, the claimant must not be presently working at any substantial gainful activity, id. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i); second, the claimant must have an impairment or combination of impairments that qualify as a severe impairment, id. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii); third, the claimant's impairment(s) must meet or equal an impairment listed in appendix 1 to the regulations, id. Pt. 404, Subpt. P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); or, fourth, the claimant's impairment(s) must prevent the claimant from doing his past relevant work, 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv); and fifth, the claimant's impairment(s) must prevent him from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience, id. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999).  The burden shifts to Commissioner at step five to show that there is other gainful employment the claimant is capable of performing despite his impairment(s).  Id.  If Commissioner meets that burden, the claimant must prove he cannot perform the alternate work.  Id.

The references are to the April 1, 2012 revision.  No significant change was made from the five-step evaluation process explanations given in earlier versions.

C.    The FC & R

The magistrate judge's proposed findings and conclusions
included the following:

    1.    "[T]here is no evidence that the ALJ sufficiently
considered [plaintiff's] back issues."  FC & R at 7.

    2.    "[T]he ALJ did not all discuss [plaintiff's]
alleged leg problems or depression."  Id.

    3.    "[T]he record contains more than an isolated
comment that [plaintiff] suffered from [depression and back
issues that extended into his legs and knees, including
diagnoses of lumbago and lumbar spondylosis] that required
the ALJ, pursuant to his duty to develop the record, to
consider and, if necessary, obtain additional information
regarding these impairments."  Id.

    4.    "[T]he ALJ did not mention or discuss any opinion
of a physician that opined on the *effects* that all
[plaintiff's] severe and non-severe impairments had on his
ability to work."  Id. at 9-10.

    5.    None of the medical records the ALJ specifically
discussed in his opinion "contained opinions on the *effects*
that any of [plaintiff's] alleged impairments had on his
ability to work."  Id. at 10.

    6.    It was "incumbent upon the ALJ to obtain an expert
medical opinion about the types of work activities that
Plaintiff could still perform given [his] impairments"; and,
by failing to do so, the ALJ "failed in his duty to develop
the record."  Id.

    7.    Plaintiff "has demonstrated prejudice as the
record contains sufficient evidence that [plaintiff] suffers
from several other impairments that the ALJ should, at the
very least, have considered."  Id. at 11.

    8.    "[T]here is not substantial evidence in the record
to (1) establish the effect [plaintiff's] arthritis and
other impairments has on his ability to perform work-related

6

tasks and (2) support the ALJ's RFC determination that [plaintiff] has the ability to perform light work."   Id.

Based on those proposed findings and conclusions, the magistrate judge recommended that the Commissioner's decision be reversed and that the case be remanded for further administrative proceedings consistent with the magistrate judge's proposed findings of fact and conclusions of law.   Id.

D.   Commissioner's Objection to FC & R

Commissioner objected generally to the proposed findings and conclusions and the recommendation of the magistrate judge on the ground that the record before the ALJ was fully developed. Commissioner noted that the ALJ's determination that plaintiff's arthritis was a severe impairment was consistent with the medical evidence in the record showing that plaintiff had lumbago and spondylosis.   According to Commissioner, the medical evidence contradicted plaintiff's contentions that his leg and back problems are inconsistent with the ALJ's finding that plaintiff had a residual functional capacity for light work.   Commissioner thought significant that at the hearing before the ALJ plaintiff "testified that, if it were not for being fired over his felony conviction, he could have continued performing his job as a forklift operator."   Def.'s Obj. at 2nd unnumbered page.

As to the magistrate judge's findings and conclusions related to the mention in the record that plaintiff complained of depression, Commissioner noted that the mere sporadic complaint of depression is not enough to establish limitations, particularly when the medical records show that on occasion plaintiff denied experiencing depression. Commissioner called the court's attention to the medical records indicating that plaintiff's mental status examinations were normal and that medication plaintiff took dealt effectively with any complaints he might have had of depression. According to Commissioner, "[s]uch minimal treatment, and improvement with medication, is not sufficient to trigger a need for further development." Id.

While recognizing that usually an ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing, the absence of a medical source statement does not make the record incomplete. Id. at 3rd unnumbered page. If there is no such medical source statement, the inquiry, according to Commissioner, focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record, and that reversal is appropriate only if the applicant shows that he was prejudiced. Id. And, Commissioner went on to argue that there has been no showing of prejudice by plaintiff and that "[t]he ALJ's findings are not

outside the realm of reasonableness and are supported by
substantial evidence in the record." <u>Id.</u>  In conclusion,
Commissioner asserts that the magistrate judge improperly
substituted his opinion for that of the ALJ.  <u>Id.</u>

III.

<u>Analysis</u>

A.   <u>Pertinent Legal Principles</u>

   1.   <u>Basic Principles</u>

A guiding principle is that judicial review of a decision of
Commissioner of nondisability is limited to two inquiries: (1)
whether Commissioner's decision is supported by substantial
evidence on the record as a whole and (2) whether Commissioner
applied the proper legal standards.  <u>See</u> <u>Anthony v. Sullivan</u>, 954
F.2d 289, 292 (5th Cir. 1992).  Substantial evidence is more than
a scintilla but less than a preponderance; it is "such relevant
evidence as a reasonable mind might accept to support a
conclusion." <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995);
<u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).  There
will not be a finding of "no substantial evidence" unless "there
is a conspicuous absence of credible choices." <u>Harrell v. Brown</u>,
862 F.2d 471, 475 (5th Cir. 1988) (per curiam).

The determination of whether there is substantial evidence
to support the fact findings of the Commissioner does not involve

9

reweighing the evidence, or trying the issues de novo. Ripley, 67 F.3d at 555. The court cannot substitute its own judgment for that of the Commissioner. Neal v. Bowen, 829 F.2d 528, 530 (5th Cir. 1987) (per curiam); Chaparro v. Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987) (per curiam); Milam v. Bowen, 782 F.2d 1284, 1286 (5th Cir. 1986). The Commissioner, not the court, has the duty to weigh the evidence, resolve material conflicts in the evidence, and make credibility choices. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991) (per curiam); Carry v. Heckler, 750 F.2d 479, 482 (5th Cir. 1985). The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings. Randall v. Sullivan, 956 F.2d 105, 109 (5th Cir. 1992) (citing Ransom v. Heckler, 715 F.2d 989, 992 (5th Cir. 1983) (per curiam)). If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them. See Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971). "The role of the courts in this quintessentially administrative process is extremely narrow and the Commissioner's decision is entitled to great deference." Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995); Lewis v. Weinberger, 515 F.2d 584, 586 (5th Cir. 1975).

Also basic is the claimant's burden of proof, as the Fifth

Circuit reminded in <u>Hames v. Heckler</u>:

> It must be remembered that an individual claiming
> disability insurance benefits under the Social Security
> Act has the burden of proving her disability.  To meet
> her burden and establish disability under the Act,
> Plaintiff must prove that she is unable to engage in
> any substantial gainful activity.  Plaintiff must also
> establish a physical impairment lasting at least twelve
> months that prevents her from engaging in substantial
> gainful activity.

707 F.2d 162, 165 (5th Cir. 1983) (per curiam) (citations

omitted).  <u>See also</u> <u>Mays v. Bowen</u>, 837 F.2d at 1364; <u>Shearer v.</u>

<u>Astrue</u>, 2008 WL 5136949, at *3, No. 4:07-CV-552-A (N.D. Tex.

Dec. 5, 2008).

   2.   <u>Principles Particularly Pertinent to Plaintiff's</u>
        <u>Complaints</u>

"The ALJ has a duty to develop the facts fully and fairly

relating to an applicant's claim for disability benefits."

<u>Ripley</u>, 67 F.3d at 557.  "If the ALJ does not satisfy his duty,

his decision is not substantially justified."  <u>Id.</u>  "Reversal of

his decision, however, is appropriate only if the applicant shows

that he was prejudiced."  <u>Id.</u>  In order to show prejudice, the

claimant "must show that, had the ALJ done his duty, [the ALJ]

could and would have adduced evidence that might have altered the

result."  <u>Kane v. Heckler</u>, 731 F.2d 1216, 1220 (5th Cir. 1984).

The level of the ALJ's obligation to develop a record depends on

whether the claimant is represented by counsel.  Id. at 1219-20;
see also Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996) (per
curiam).

Isolated comments in the record concerning an alleged
impairment are not necessarily sufficient to raise a suspicion
that the impairment exists.  Pierre v. Sullivan, 884 F.2d 799,
803 (5th Cir. 1989)(per curiam).  "In order to justify a remand,
the evidence must first be 'new,' and not merely cumulative of
what is already in the record."  Id.  "[T]he claimant must
demonstrate good cause for not having incorporated the new
evidence into the administrative record."  Id.

"Usually, the ALJ should request a medical source statement
describing the types of work that the applicant is still capable
of performing."  Ripley, 67 F.3d at 557.  "The absence of such a
statement, however, does not, in itself, make the record
incomplete"; and, "where no medical statement has been provided,
[the] inquiry focuses upon whether the decision of the ALJ is
supported by substantial evidence in the existing record."  Id.

The position taken by the claimant as to the reasons for his
alleged disability is a factor in determining the level of
inquiry the ALJ is obligated to pursue.  Haywood v. Sullivan, 888
F.2d 1463, 1472 (5th Cir. 1989)(per curiam).  In Haywood, after
having provided the reminder that "[i]t is well settled that the

claimant bears an initial heavy burden of proving his or her disability," id., the Fifth Circuit gave the following explanation of some of the reasons why a further inquiry by the ALJ was not required in that case:

> Haywood failed to raise the necessary suspicion. Although Haywood requested a psychological examination at the end of her hearing, to that point she had based her disability claim only on a "heart condition" and offered evidence focused on this claim. While evidence of Haywood's anxiety was recognized at the hearing, unlike the situation in Pearson, Haywood's testimony did not indicate necessity for psychological review, nor did any doctors on record at that time recommend such a review.

Id.

B.   Plaintiff Is Not Entitled to a Reversal and Remand on the
     Ground that Commissioner Failed to Fully Develop the Record

As a preliminary matter, the court notes that plaintiff's legal representation in his claims of disability began at an early stage, no later than June 30, 2010, when his counsel, Roger D. Allen, ("Allen") signed his "Acceptance of Appointment," accepting appointment as representative of plaintiff in the pursuit of plaintiff's claims under titles II and XVI. R. at 49. Plaintiff had legal representation at the August 4, 2011 hearing before the ALJ, R. at 22; and, Allen was intimately involved in the representation of plaintiff at each step of the proceedings leading up to the hearing, R. at 50, 55, 58, 60, 62, 64, 67, 76, 82, 93, 95, 271, and 310.  The rulings and determinations of the

ALJ are, according to the Fifth Circuit, to be evaluated with
that in mind.

      1.   <u>Plaintiff's Claim that the ALJ Failed to Fully Consider</u>
            <u>Plaintiff's Physical Impairments</u>

The physical impairments plaintiff claims the ALJ failed to
investigate were back and leg problems about which plaintiff had
complained.  Pl.'s Br. at 6th unnumbered page.  The magistrate
judge likewise suggested that the ALJ failed to properly consider
those complaints.  The court disagrees.

In his five-step evaluation process, the ALJ started by
recognizing that plaintiff had not engaged in substantial gainful
activity since December 22, 2009, the alleged disability onset
date.  R. at 12, ¶ 2.  At the next step, the ALJ found that
plaintiff had a severe impairment in the form of arthritis.  <u>Id.</u>,
¶ 3.  Next, the ALJ found that plaintiff "does not have an
impairment or combination of impairments that meets or medically
equals the severity of one of the listed impairments."  R. at 13,
¶ 4.  In making that finding, <u>the ALJ "considered all of
[plaintiff's] impairments individually and in combination</u> but
[found] no evidence that the combined clinical findings from such
impairments reach the level of severity contemplated in the
Listings."  <u>Id.</u> (emphasis added).  Next, the ALJ "<u>[a]fter careful
consideration of the entire record</u>, . . . [found] that [plaintiff

14

had] the residual functional capacity to perform the full range of light work."[2]  Id., ¶ 5 (emphasis added).  In making his residual functional capacity finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered opinion evidence."  Id. (emphasis added).

The ALJ's opinion said that he took into account in making his findings, and reaching his conclusions, plaintiff's complaints that he had "difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing."  R. at 14.  In other words, the ALJ considered plaintiff's physical limitations that could be caused by

---

[2]Light work is defined by the regulations to which the ALJ referred as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

plaintiff's back and leg problems.  A related finding made by the
ALJ was that plaintiff's

> medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however,
> [plaintiff's] statements concerning the intensity,
> persistence and limiting effects of these symptoms are
> not credible to the extent they are inconsistent with
> the [ALJ's] residual functional capacity assessment.

Id.

The ALJ could not have made clearer that he considered all
of the evidence before him, including evidence of complaints by
plaintiff of back or leg problems, in making the findings the ALJ
was required to make in the five-step evaluation process.  There
is nothing in the record to suggest that the recitations in the
ALJ's report of what he considered were dishonest or inaccurate.
Consequently, the court accepts them at face value.

The ALJ's opinion discloses that the ALJ gave proper
consideration to the consultive examination by Dr. Bosworth, and
the complaints plaintiff made to that examiner.  The report of
Dr. Bosworth that the ALJ considered specifically discusses
plaintiff's complaints of back (hips) and leg (knees) problems,
which plaintiff referred to during the examination as "bone
arthritis."  R. at 204.  Dr. Bosworth made the following findings
that support the ALJ's residual functional capacity finding:

> **MUSCULOSKELETAL:** Gait and station are normal.  Heel,
> toe, and tandem walking are done readily.   The

16

> applicant is able to get on and off the exam table and
> move around the room without assistance or difficulty.
> Fine and dextrous finger control is normal.  No atrophy
> of any extremity is noted.

R. at 206.

Dr. Bosworth's clinical impression of

"[a]rthritis/arthralgia involving his shoulders and knees

primarily, and to a lesser extent his left hip," id., thus

provided justification for the ALJ's grouping of plaintiff's

musculoskeletal problems under the "arthritis" umbrella.

The ALJ concluded that "[t]he consultive examination of the

[plaintiff] supports the residual functional capacity as

described above" and that "[t]he credibility of [plaintiff's]

allegations is weakened by inconsistencies between his

allegations and the medical evidence."  R. at 15.  Nevertheless,

the ALJ gave plaintiff the benefit of the doubt by finding that

the effect on plaintiff of arthritis problems constituted a

severe impairment.[3]

---

[3]The FC & R contained an interesting footnote, reading as follows:
> The court notes that there are two State Agency Medical Consultant
> opinions in the record finding that [plaintiff] did not suffer from any
> severe impairments.  (See Tr. 214, 270.)  If the ALJ had found that
> [plaintiff] did not suffer from any severe impairments at Step Two, such
> opinions could potentially have supported his decision.  However, the
> ALJ wholly failed to discuss such opinions and did find, based on other
> evidence in the record that the ALJ did not discuss, that [plaintiff]
> suffered from the severe impairment of arthritis. (Tr. 12.)

FC & R at 10 n.7.  In other words, the magistrate judge concluded that because the ALJ gave
plaintiff the benefit of the doubt, the ALJ's residual functional capacity determination is of questionable

(continued...)

The complaint by plaintiff that the record did not establish the effect of plaintiff's conditions on his ability to work is undercut to a great degree by plaintiff's hearing testimony that he was working full-time as a forklift operator from January 2008 through December 2009 when he lost his job because he had a felony conviction, and that were it not for his felony conviction he could have continued to work as a forklift operator.  R. at 24-25.  Of interest, plaintiff contends his disability started in December 2009, the same month he lost his job as a forklift operator because of his felony conviction.

Summed up, there is an abundance of evidence in the record to support the findings of the ALJ concerning the effect of plaintiff's physical impairments on his ability to work; and, there is no suggestion in the record that there was a need for the ALJ to obtain a further opinion on the issue of whether plaintiff had a physical impairment that adversely affected his ability to work beyond the limitations inherent in the ALJ's residual functional capacity finding.  The ALJ had sufficient information to support his findings that plaintiff had the residual functional capacity to perform the full range of light

---

[3](...continued)
merit.  Also, the magistrate judge apparently failed to appreciate the scope of the ALJ's evaluation that plaintiff's impairments caused by his arthritis constituted the severe impairment.

work and that he was capable of performing past relevant work as a packer.

> 2.  Plaintiff's Claim that the ALJ Failed to Properly Consider or Investigate Plaintiff's Alleged Mental Impairment

Although plaintiff had legal representation at his August 4, 2011 hearing before the ALJ and in preparation for that hearing, and although his attorney questioned him concerning his impairments, no mention was made by plaintiff or his counsel at the hearing of any mental impairment suffered by plaintiff.  R. at 22-35.  Plaintiff's attorney stated on the record of the hearing that he had explained to plaintiff the purpose of the hearing.  Id. at 22.  When plaintiff's attorney questioned him for the purpose of developing on the record plaintiff's impairments, there was no suggestion of any mental impairment. Id. at 30-32.  Rather, the emphasis was on problems caused by plaintiff's arthritis, including problems with his back and his knees.   Id.

Plaintiff did mention when being questioned by the ALJ that before he was given sleeping pills, he had trouble sleeping at night, but that the sleeping pills solved the problem.  Id. at 27.  One of the medical records, a record of an outpatient visit by plaintiff to John Peter Smith Medical Center ("JPS") on June 24, 2011, apparently relates to the resolution of

19

plaintiff's sleep problem by medication.   There is an entry in those records stating "[patient] reports improved mood & sleep [with] Fluoxetine - no problem with new medication | happy with current result."   R. at 304.[4]

As the Fifth Circuit noted in <u>Haywood</u>, the position taken by a claimant as to the reasons for his alleged disability is a factor in determining the level of inquiry the ALJ is obligated to pursue.   <u>Haywood</u>, 888 F.2d at 1472.   The ALJ's decision shows that he fully considered all reasons given by plaintiff and his attorney at the hearing for his disability.   Consistent with the Fifth Circuit's observations in <u>Haywood</u>, <u>id.</u>, further inquiry by the ALJ into any mental impairment that might have been mentioned in the medical records was not indicated by any position taken by plaintiff or his attorney.   The fact of the matter is that mental impairment was a non-issue in this case until after Commissioner had rendered her final decision against plaintiff.

Plaintiff and the magistrate judge both present as significant a record dated November 16, 2010, in which the notations were made that plaintiff "does complain of chronic depression and has occasional suicidal ideations," R. at 272;

---

[4]Fluoxetine is the generic name for the medication having the brand names of Prozac or Sarafem, which often are prescribed for treatment of depression.  <u>Drug Tables</u>, The Merck Manual Online (June 4, 2014, 12:46 PM) http://www.merckmanuals.com/professional/drugnames-index/generic/f.html.

that he had "[m]arked depression with apparent suicidal
ideations," id. at 273; and that he "has apparently rather severe
depression, and this needs to be evaluated in treatment and
treated," id.  The emphasis placed on those records unfairly
presents the depression issue.  It overlooks that only a few
months earlier when plaintiff was evaluated at JPS, his
psychiatric evaluation was negative.  R. at 241.  More
importantly, it overlooks the more current medical records
stating that plaintiff denied having depression.  A JPS record of
a June 28, 2011 evaluation showed "negative" by the heading
"Psychiatric," R. at 274, and discloses that plaintiff "[d]enies
depression or bipolar disorder," R. at 279.  A JPS record dated
September 6, 2011, showed that plaintiff had a history of
depression, R. at 251, but did not contain any impression or
diagnosis of, or plan of treatment for, depression, id. at 352.

As previously discussed, the ALJ carefully considered the
entire record, considered all of plaintiff's impairments,
individually and in combination, and considered all of
plaintiff's symptoms, supra at 14-16.  Thus, he considered all of
the indications in the medical records that plaintiff had a
history of having suffered depression, and that depression
apparently no longer was a problem with plaintiff.  The ALJ saw
that nothing in the records indicated that depression constituted

an impairment that deserved further explanation or was inconsistent with the ALJ's residual functional capacity determination.

The comments in the record on which plaintiff relies that he sometimes had trouble remembering his medicine, that he sometimes had problems getting along with neighbors and authority figures, that he was let go from work for fighting, that he has an unusual fear of driving, and that he does not follow spoken instructions well because he forgets stuff, Pl.'s Br. at 7th unnumbered page, are not legally significant. The court does not consider that any of those problems mentioned by plaintiff in passing rise to the level of something that deserved special mention or further investigation by the ALJ. The ALJ considered the entire record, and was aware of each of those comments, and gave each of them whatever significance it might have deserved.

C.    Conclusion

The court has not been persuaded that the Commissioner's decision is not supported by substantial evidence in the record as whole, or that Commissioner applied any improper legal standard in reaching the decision. To the contrary, after reviewing the record, the court is satisfied that there is substantial evidence in the record to support the findings and conclusions of the ALJ that became the basis for the decision of

the Commissioner, and that the decision is consistent with applicable law. Nothing has been brought to the court's attention to cause the court to believe that any additional evidence could have been developed by the ALJ that would have altered the ALJ's findings and conclusions. Therefore, the court rejects the recommendation of the magistrate judge, and is affirming the decision of the Commissioner.

IV.

Order

The court ORDERS that the decision of the Commissioner that (1) based on the application of plaintiff for a period of disability and disability insurance benefits protectively filed on February 8, 2010, plaintiff is not disabled under sections 216(i) and 223(d) of the Act, and (2) based on the application for supplemental security income protectively filed by plaintiff on February 8, 2010, plaintiff is not disabled under section 1614(a)(3)(A) of the Act, be, and is hereby, affirmed.

SIGNED June 5, 2014.

_____
JOHN McBRYDE
United States District Judge